**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Debbie Pittman, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25 C 7791 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| Hazel and Olive, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff filed this putative class action on July 10, 2025, alleging that Defendant violated the Americans with Disabilities Act ("ADA") because Defendant's website was not accessible for visually impaired persons. R. 1. Under the ADA, attorney's fees are "awarded to prevailing plaintiffs as a matter of course but prevailing defendants should recover only when forced to litigate claims that are frivolous, unreasonable, or pursued in bad faith." *Sanglap v. LaSalle Bank, FSB*, 345 F.3d 515, 520 (7th Cir. 2003). Defendant contends that Plaintiff's counsel David Reyes of Equal Access Law Group PLLC acted in bad faith throughout this litigation "for the sole purpose of prolonging this litigation and running up a bill." R. 35 at 1. The Court finds that Plaintiff's counsel acted in bad faith to run up his costs as follows: (1) when filing a motion to enforce the settlement agreement at R. 16, and (2) regarding certain conduct related to discovery. The Court also finds that Plaintiff's counsel violated his duty of candor toward the Court and that Plaintiff's counsel violated Federal Rule of Civil Procedure 11 when filing his opposition at R. 32 to Defendant's motion to dismiss. For these reasons, the Court orders as a sanction that this case is dismissed with prejudice and that Plaintiff's counsel must cover all costs and fees incurred by Defendant in defending this lawsuit.

**Discussion**

1. **Motion to Enforce the Settlement Agreement**

On November 9, 2025, Plaintiff's counsel filed a motion to enforce a settlement agreement. R. 16. In the motion, Plaintiff's counsel asserted that the parties had executed a written settlement agreement in July 2025. *Id.* at 4. Plaintiff's counsel then requested relief that the Court require Defendant "to execute and comply with the written Settlement Agreement transmitted on July 14, 2025." *Id.* at 5.

The Court has since reviewed additional information from the parties to investigate this issue. Based on declarations and email exhibits submitted by the parties, the Court makes the following findings.

On July 14, 2025, Plaintiff's counsel emailed a draft settlement agreement to Defendant. R. 43-1 at 1. On July 17, 2025, Defendant responded and attached a signed agreement (the "July 17 Agreement"). *Id.* The July 17 Agreement was signed only by Defendant. *Id.* at 10. In relevant part, the July 17 Agreement contained certain release language in § 3(a) and § 3(g). *Id.* at 5–6. Defendant had previously communicated to Plaintiff's counsel that this release language was of "the utmost importance to Defendant with respect to any settlement." R. 48-1 ¶ 5. In other words, Plaintiff's counsel was aware that the release language in § 3(a) and § 3(g) was a material term of the July 17 Agreement.

Plaintiff's counsel then failed to discuss the July 17 Agreement with his client, Ms. Pittman, until August 26, 2025. R. 43 ¶ 5. On August 27, Ms. Pittman informed Plaintiff's counsel that she rejected the July 17 Agreement, specifically the release language in § 3(g) and also the release language in § 3(a) pursuant to California law. R. 47-1. Plaintiff ultimately signed a version of the settlement agreement on September 1, 2025 (the "September 1 Agreement") that retained the

2

release language in § 3(g) but removed the release language in § 3(a) regarding California law. R. 43-2; R. 43-3. Because the September 1 Agreement modified terms of the July 17 Agreement, it was a counteroffer. *See VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 251 (7th Cir. 2016) (citations omitted) ("[A] reply to an offer which purports to be an acceptance but contains additions, limitations or other modifications is a rejection of the offer and constitutes a counter-offer."). Defendant rejected this counteroffer. R. 48-1 ¶ 13. Then, on November 9, 2025, Plaintiff's counsel moved to enforce the July 17 Agreement. R. 16.

As described above, Plaintiff's counsel was aware that his client had rejected the July 17 Agreement and that Defendant had rejected the September 1 counteroffer. The Court thus finds that Plaintiff's counsel engaged in bad faith conduct by filing his motion to enforce the July 17 Agreement, and that Plaintiff's counsel violated multiple rules by doing so. First, under Northern District of Illinois Local Rule 83.50 attorneys are bound by the Model Rules of Professional Conduct. And under Model Rule of Professional Conduct 1.2, "a lawyer shall abide by a client's decisions concerning the objectives of representation." By seeking to enforce an agreement which his client had previously rejected, and for which there is no evidence his client had ever accepted, Plaintiff's counsel violated Rule 1.2. Second, under Federal Rule of Civil Procedure 11, "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument . . . [and that] the factual contentions have evidentiary support." Based on the facts set forth above, Plaintiff's counsel was well aware that his motion to enforce was a frivolous argument that lacked evidentiary support.

### 2. Candor Toward the Tribunal

Plaintiff's counsel also violated Model Rule of Professional Conduct 3.3, which imposes a duty of candor on Plaintiff's counsel. At R. 42, the Court ordered:

> Plaintiff's counsel shall submit a signed affidavit indicating the following information: the date and medium through which Plaintiff's counsel informed Plaintiff that the parties had reached a settlement, and the date and medium through which Plaintiff approved the settlement. Plaintiff's counsel shall attach as evidence to the declaration any emails or communications with Plaintiff or with Defense counsel that support Plaintiff's counsel's position that the parties had reached a settlement agreement, and that Plaintiff was aware of the settlement agreement.

Critically, when first responding to this order at R. 43, Plaintiff's counsel neglected to include the emails which were later attached at R. 47-1, and which indicated that Ms. Pittman had rejected the July 17 Agreement. The emails at R. 47-1 were plainly relevant to the Court's order and should have been initially disclosed at R. 43. Plaintiff's counsel only shared these emails with the Court after Defendant moved at R. 44 for an order to show cause why Plaintiff had withheld the emails.[1]

### 3. Discovery Conduct

Under Federal Rule of Civil Procedure 26(d)(1), "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Despite this requirement, Plaintiff's counsel propounded discovery requests to Defendant on November 19, 2025, prior to the Rule 26(f) conference. *See* R. 41-1 at 4. The Court finds that Plaintiff's counsel took this action in bad faith to run up his costs. To make matters worse, Plaintiff's counsel stated in a signed declaration before the Court that "Plaintiff did not serve discovery requests." R. 40-1 ¶ 6. This statement was false, and yet another violation of Model Rule of Professional Conduct 3.3.

---

[1] Defendant was aware of the omitted emails because, earlier in the litigation, the emails had been voluntarily shared by Plaintiff's counsel with Defendant's counsel. R. 44 ¶ 10.

### 4. Reliance on AI-Generated Case Citations

Defendant moved to dismiss at R. 21 and Plaintiff's counsel responded at R. 32. Defendant then moved to strike at R. 35 on the basis that Plaintiff's counsel's response brief was generated by artificial intelligence and cited fake cases. At R. 38, Plaintiff's counsel admitted that he relied on artificial intelligence, that Plaintiff's counsel failed to cite check, and that Plaintiff's counsel submitted fake cases to the Court. The Court finds that Plaintiff's counsel violated Federal Rule of Civil Procedure 11 when filing his response.

### 5. Sanctions

Given the above issues—Plaintiff's counsel's bad faith motion to enforce the settlement agreement, Plaintiff's counsel's repeated lack of candor toward the Court, Plaintiff's counsel's disingenuous use of discovery to generate fees, and Plaintiff's counsel's negligent reliance on artificial intelligence that cited fake cases—the Court orders the following sanctions. First, Plaintiff's counsel shall cover all costs and fees incurred by Defendant in defending this lawsuit. The parties are ordered to meet and confer to determine the total costs and fees and to arrange for the payment. Any fees incurred by Defendant during this meet and confer process shall also be covered by Plaintiff's counsel. Second, once the payment has been finalized, this case shall be dismissed with prejudice.

### Conclusion

Plaintiff's counsel David Reyes is ordered to cover all costs and fees incurred by Defendant in defending this lawsuit. Motion [16] to enforce the settlement agreement is denied. Motion [21] to dismiss is denied as moot. Motion [35] to strike is granted. By 3/30/26, the parties shall submit a joint status report updating the Court as to whether Plaintiff's counsel has completed payment. Plaintiff's counsel shall send a copy of this order to the Illinois ARDC.

5

**SO ORDERED.**

**ENTERED: March 19, 2026**

**HON. JORGE L. ALONSO**
**United States District Judge**